UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------x

In re: MASSMUTUAL FINANCIAL GROUP and
MML INVESTOR SECURITIES, INC.

Miscellaneous Business Docket
No. 05MBD10172

DECLARATION OF
PATRICK J. LAMPARELLO

------------------------------x

------------------------------x

YECHOUDA EINHORN, SARAH MANDEL,
DAVID LEBOVITZ, SIDNEY REISS,
ABRAHAM PASKESZ, ISAAC LEBOVITZ and
BERNARD MOSKOVITS,

    Plaintiffs,

vs.

METROPOLITAN LIFE INSURANCE
COMPANY,

    Defendant.

Related Foreign Case
Civil Action No.: 03-CIV-08396 (KMK)

United States District Court
Southern District of New York

------------------------------x

PATRICK J. LAMPARELLO, declares under penalty of perjury:

1. I am an associate at the law firm of Proskauer Rose LLP, attorneys for Defendant Metropolitan Life Insurance Company ("MetLife") in the matter of *Yechouda Einhorn, et al. v. Metropolitan Life Insurance Company*, Civil Action No. 03-CIV-08396 (KMK), pending in the Southern District of New York. I am fully familiar with the facts set forth herein.

2. I submit this Declaration in support of MetLife's motion to enforce subpoenas served on non-parties MassMutual Financial Group ("MassMutual") and MML Investors

5890/48476-350 NJWORD/105996v3

Services, Inc. ("MMLISI") and to compel MassMutual and MMLISI to produce documents responsive to the subpoenas pursuant to Federal Rules of Civil Procedure 37 and 45 and Local Rule 37.1.

3. On or about April 6, 2005, my colleague Steven H. Holinstat requested that I contact Edward Rooney, attorney for MassMutual, for the purpose of conducting a discovery conference regarding MassMutual's objection on the grounds of attorney-client privilege and attorney work-product to producing documents concerning its investigation of Plaintiffs' sales activities as agents and brokers of MassMutual subsequent to their employment with MetLife.

4. On or about April 6, 2005, I telephoned Mr. Rooney and asked whether MassMutual would produce any documents relating to its investigation of Plaintiffs. Mr. Rooney advised that all documents concerning the investigation were privileged and MassMutual would not produce any of these documents, but Mr. Rooney stated that he would consult with his client one more time before providing MassMutual's final answer regarding the production of the investigation documents.

5. I advised Mr. Rooney that if MassMutual would not produce any documents, MetLife would require that MassMutual produce a privilege log identifying these documents. Mr. Rooney responded that a privilege log was impractical because the file was very large and that he believed that a privilege log was not necessary because MassMutual had sufficiently identified the withheld documents.

6. I informed Mr. Rooney, however, that MetLife required a privilege log so that MetLife could review the types of documents withheld, the dates of the documents and other information, such as the authors and recipients, so that MetLife could determine whether to

challenge MassMutual's assertions of privilege.

7. Pursuant to Mr. Rooney's request that I direct him to the rule requiring MassMutual to create a privilege log, I advised Mr. Rooney to review Fed. R. Civ. P. 45(d)(2) which requires a subpoenaed party to create a privilege log for any documents withheld on the grounds of privilege. Mr. Rooney advised that he would review the rule and telephone me shortly.

8. On or about April 7, 2005, Mr. Rooney telephoned me to advise that he had reviewed Fed. R. Civ. P. 45(d)(2) and that he did not believe that MassMutual was required to produce a privilege log. Mr. Rooney further informed me that MassMutual would not produce a privilege log and that MassMutual's Response and Objections to MetLife's subpoena sufficiently identified the documents that MassMutual refused to produce on the grounds of attorney-client privilege and attorney work-product.

9. Mr. Rooney also confirmed that MassMutual would not produce any documents relating to its investigation of Plaintiffs' sales practices. Furthermore, Mr. Rooney advised that MetLife should make a motion to the Court if it wished to obtain these documents.

10. On or about April 8, 2005, MetLife received documents from John Hancock Life Insurance Company in response to a subpoena similar to the one served on MassMutual. John Hancock produced documents concerning its investigation of Plaintiffs' sales activities as agents or brokers of John Hancock.

11. Among the documents produced by John Hancock was an e-mail dated January 20, 2004 from John Milbier, a MassMutual employee, informing John Hancock of MassMutual's investigation into Plaintiffs' sales practices and requesting information concerning their sales

activities with John Hancock. Attached hereto as Exhibit A is a true and accurate copy of Mr. Milbier's e-mail to John Hancock employees dated January 20, 2004.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that the foregoing is true and correct.

                                                PATRICK J. LAMPARELLO

5890/48476-350 NJWORD/105996v3

EXHIBIT

A

EXHIBIT

B

2002 U.S. Dist. LEXIS 24102; 31 Media L. Rep. 1444

AMERICAN SAVINGS BANK, FSB, Plaintiff, -against- UBS PAINEWEBBER, INC., Defendant.

M8-85

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 24102; 31 Media L. Rep. 1444

December 16, 2002, Decided
December 16, 2002, Filed

**DISPOSITION-1:** [*1] Court ruled in favor of plaintiff and directed non-party Fitch, Inc. to comply with subpoenas served upon it on August 26, 2002.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff bank sued defendant investment broker for an alleged unlawful scheme to induce the bank to make certain investments. The bank moved to enforce a subpoena served on a non-party, credit rating agency, seeking information from the agency because the investment broker contended in its defense that it had relied on the agency for information in the marketing of certain loans. The agency moved to quash the subpoena.

**OVERVIEW:** The agency claimed that the requested information was protected by the journalist privilege. The bank claimed that the agency waived the privilege by not producing a privilege log. The court held that the agency's wholesale refusal to produce a log and assertion of a blanket privilege was an unreasonable course of action. Nevertheless, it was not a waiver of the privilege. Critical to the privilege analysis was whether the agency had acquired the information sought by the subpoena as part of its newsgathering process with the intent to disseminate the information to the public. The court found that the agency did not operate publications with complete circulation to the general public and that its ratings were based on a private contractual fee agreement. The agency was not engaged in newsgathering when it procured the information, and thus, it was not entitled to the protections afforded by the journalist privilege. Even assuming arguendo that it were, the bank had overcome the privilege by showing that the information was material and could not be obtained from another source.

**OUTCOME:** The court granted the motion to enforce the third-party subpoena and denied the motion to quash.

**CORE TERMS:** journalist, subpoena, newsgathering, log, general public, rating, Shield Law, producing, discovery, gather, disseminate, circulation, gathering, publish, von, highly relevant, burdensome, collecting, marketing, objected, lawsuit

**LexisNexis(TM) Headnotes**

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN1]Fed. R. Civ. P. 45(d)(2) requires that any claim of privilege be supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to contest the claim. This rule is further supported and specified by U.S. Dist. Ct., S.D. N.Y., R. 26.2(a)(2)(A), which requires that documents objected to on the basis of privilege be identified by type, general subject matter and other identifying criteria such as the date of creation. The burden of establishing privilege is on the party asserting it to show that the information they have withheld is privileged.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

[HN2]The Shield Law, 8 N.Y. Civ. Rights Law § 79-h, defines a professional journalist as one who, for gain or livelihood, is engaged in gathering, preparing, collecting, writing, editing of news intended for a newspaper, magazine, news agency, press association, or wire service or other professional medium or agency which has as one of its functions the processing and researching of news intended for dissemination to the public. 8 N.Y. Civ. Rights Law § 79-h(a)(6). News is defined as written or oral information or communication concerning local, national, or worldwide events or other matters of public concern or public interest or affecting the public welfare. 8 N.Y. Civ. Rights Law § 79-h(a)(8). To fall within the protected group a party must demonstrate that it was engaged in newsgathering with the intent to disseminate information to the public and that such intent existed at the inception of the newsgathering process.

*Civil Procedure > Disclosure & Discovery > Privileged Matters*

Page 1

Case 1:05-mc-10172-GAO    Document 3    Filed 04/15/2005    Page 8 of 14

2002 U.S. Dist. LEXIS 24102; 31 Media L. Rep. 1444

[HN3]The journalist privilege can be overcome by a clear and specific showing that the information sought is (1) highly material, (2) critical to the maintenance of the claim, and (3) not otherwise available.

**COUNSEL:** For Plaintiff: Adrienne B. Koch, Of Counsel, ESANU KATSY KORINS & SIGER, LLP, New York, New York.

For Non-Party Fitch, Inc.: Evan A. Davis, Gabrielle S. Friedman, Of Counsel, CLEARY, GOTTLIEB, STEEN & HAMILTON, New York, New York.

**JUDGES:** JOHN F. KEENAN, United States District Judge, PART I.

**OPINIONBY:** JOHN F. KEENAN

**OPINION:** OPINION AND ORDER

**JOHN F. KEENAN, United States District Judge:**

Before the Court is motion of plaintiff American Savings Bank, FSB ("ASB") to enforce a subpoena served on non-party Fitch, Inc. ("Fitch") and Fitch's cross-motion to quash the subpoena. The underlying action is pending in the District of Hawaii. That lawsuit asserts state law claims for misrepresentation, breach of warranty, breach of fiduciary duty and negligence against UBS PaineWebber, Inc. ("PaineWebber") based on PaineWebber's alleged unlawful scheme to induce ASB to make certain investments. As ASB's investment broker, PaineWebber makes investment recommendations to ASB. PaineWebber contends that it made representations to ASB concerning marketing investments in three Collateralized [*2] Loan Obligations ("CLOs") based on information received from Fitch. ASB purchased certain Trust Certificates in which PaineWebber "embedded" an interest in the equity tranche of those CLOs.

Fitch is a credit rating agency based in New York engaged in collecting, analyzing, and publishing information on securities and various types of debt. Brown Aff. P 2. Fitch gathers information and provides ratings that are published, either to the general public or to certain segments of it, to assist investors in making informed investment decisions. ASB acknowledges that Fitch did not rate the specific Trust Certificates at issue in the lawsuit. ASB still seeks information from Fitch because in the course of creating and marketing those CLOs and the related Trust Certificates, PaineWebber communicated with Fitch about a variety of important issues related both to the structuring of the CLOs and to the related Trust Certificates. See Alston Aff. P 13. The subpoenas seek information and documents concerning the communications between PaineWebber and Fitch on these matters.

ASB served subpoenas on Fitch to obtain information it claims is (1) highly relevant to ASB's claims and PaineWebber's [*3] alleged defenses and is (2) unavailable from PaineWebber or any other source. ASB claims to have learned through discovery that the records from PaineWebber of communications with Fitch are incomplete and ASB can only acquire the missing materials through these subpoenas. Although the relevant witnesses from PaineWebber have been deposed and the relevant documents have been requested, ASB has been unable to obtain complete information concerning these communications. Alston Aff. P 13.

On August 26, 2002, ASB served on Fitch subpoenas seeking documents and testimony relevant to Fitch's communications with PaineWebber on these issues. Fitch has objected to producing any documents or providing testimony on the grounds that all responsive documents or testimony would be protected by the journalist privilege.

**DISCUSSION**

I. Privilege log

ASB argues that Fitch's failure to produce a privilege log results in Fitch waiving any privilege objections.

[HN1]Federal Rule of Civil Procedure 45(d)(2) requires that any claim of privilege be "supported by a description of the nature of the documents, communications or things not produced that is sufficient to enable the demanding party to [*4] contest the claim." Fed. R. Civ. P. 45(d)(2). This rule is further supported and specified by Local Civil Rule 26.2(a)(2)(A) which requires that documents objected to on the basis of privilege be identified by type, general subject matter and other identifying criteria such as the date of creation. The burden of establishing privilege is on the party asserting it to show that the information they have withheld is privileged. See von Bulow v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987). To do so, Fitch must identify the material in question with specificity to demonstrate that it relates to newsgathering.

While Fitch's claim that creating a log would be as burdensome as producing the requested documents may be true, without the log ASB cannot determine which items, if any, it needs Fitch to produce. Further, the burdensome nature of producing the log deters parties from asserting the privilege haphazardly. The Court finds Fitch's wholesale refusal to produce a log and assertion of a blanket privilege an unreasonable course of action. Nevertheless, the Court does not

Page 2

Case 1:05-mc-10172-GAO   Document 3   Filed 04/15/2005   Page 9 of 14

2002 U.S. Dist. LEXIS 24102; 31 Media L. Rep. 1444

consider it a waiver of Fitch's privilege claims and will evaluate Fitch's assertion of the journalist [*5] privilege.

II. Journalist privilege

Fitch claims its work is protected by the journalist privilege under the United States and New York State Constitutions, and Section 79-h of the New York Civil Rights Law, 8 N.Y. Civ. Rights Law § 79-h ("the Shield Law"). Fitch argues that ASB's attempt to obtain discovery here violates the protections accorded Fitch as a member of the financial media and the subpoenas should be quashed.

[HN2]The Shield Law defines a professional journalist as "one who, for gain or livelihood, is engaged in gathering, preparing, collecting, writing, editing ... of news intended for a newspaper, magazine, news agency, press association, or wire service or other professional medium or agency which has as one of its functions the processing and researching of news intended for dissemination to the public." 8 N.Y. Civ. Rights Law § 79-h(a)(6). News is defined as "written [or] oral ... information or communication concerning local, national, or worldwide events or other matters of public concern or public interest or affecting the public welfare." Id. § 79-h(a)(8). To fall within the protected group here Fitch must demonstrate that it was engaged in newsgathering [*6] with the intent "to disseminate information to the public and that such intent existed at the inception of the newsgathering process." von Bulow, 811 F.2d at 144; Pan Am Corp. v. Delta Air Lines, Inc., 161 B.R. 577, 580 (S.D.N.Y. 1993).

In Pan Am Corp., Judge Preska considered this issue regarding a competitor of Fitch, Standard & Poor's ("S&P"), under the First Amendment and held that S&P functions as a journalist when gathering information for its ratings. Pan Am Corp, 161 B.R. at 586. S&P gathered and analyzed the data for communication to the public through its publications including *CreditWeek*, *HighYield Quarterly*, and *Ratings Handbook*. Id. at 579. These periodicals have a regular circulation to a general population. Therefore, the court found that because S&P publishes for the benefit of the general public and it had the requisite newsgathering intent from the beginning of the process, it is entitled to the protection afforded the press. Id.; see also In re Scott Paper Co. Sec. Litig., 145 F.R.D. 366, 369 (E.D. Pa. 1992) (holding the same). Critical to the analysis here is whether [*7] Fitch acquired the information sought by the subpoena as party of its newsgathering process with the intent to disseminate this information to the public. Pan Am Corp., 161 B.R. at 583 (citing von Bulow, 811 F.2d at 144).

Fitch emphasizes that its employees gather information about the companies Fitch rates to publish commentary and ratings on its website, which functions as Fitch's primary means of disseminating information to both its subscribers and the general public. In contrast to S&P, Fitch does not operate publications with complete circulation to the general public. Fitch performs its ratings based on a private contractual agreement. See Nat'l Med. Care, Inc. v. Home Med. of Am., Inc., Index No. 103030/02, 2002 WL 146179 (N.Y. Sup. Ct. May 20, 2002). Fitch rates transactions at the request of issuers or investment bankers for a fee. Fitch rarely rates transactions without a fee. Koch Reply Aff. Exh. L at 48-51. ASB acknowledges that Fitch sometimes functions as a "news-gatherer"; however, ASB argues that in this case it has not subpoenaed any information that could fall within the protection of the journalist privilege. ASB [*8] emphasizes that research conducted for a fee cannot be journalism.

The journalist privilege is a qualified one. Fitch is not primarily engaged in newsgathering generally, nor was it doing so when procuring the information sought by the subpoenas. The Court finds that Fitch is not entitled to the protections afforded by the journalist privilege.

Assuming arguendo that Fitch were entitled to the protection of the privilege, ASB has overcome the privilege. [HN3]The journalist privilege can be overcome by a clear and specific showing that the information sought is (1) highly material, (2) critical to the maintenance of the claim, and (3) not otherwise available. O'Neill v. Oakgrove Constr., Inc., 71 N.Y.2d 521, 528 N.Y.S.2d 1, 523 N.E.2d 277 (1998). Fitch contends that ASB has not satisfied this three-prong test because the material sought is not highly relevant and critical because Fitch did not rate any of the securities that ASB purchased from PaineWebber. Basically, the debt that Fitch did rate is not at issue in the underlying lawsuit and Fitch did not gather information on the securities that ASB purchased. Fitch claims that the connection ASB draws to the information [*9] sought and the underlying case is "tenuous at best" and cannot meet the relevance standard of the Shield Law.

However, ASB has demonstrated that this information is material and crucial to ASB's claims and PaineWebber's alleged defenses. Further, ASB has conducted discovery sufficient to determine that Fitch is the only available source of these communications necessary to the litigation against PaineWebber. Having sought the information elsewhere, ASB must now turn to Fitch. Any privilege to which Fitch would potentially be entitled has been overcome by this showing.

Page 3

Case 1:05-mc-10172-GAO    Document 3    Filed 04/15/2005    Page 10 of 14

2002 U.S. Dist. LEXIS 24102; 31 Media L. Rep. 1444

**CONCLUSION**

The Court rules in favor of ASB and directs Fitch to comply with the subpoenas served upon it on August 26, 2002.

**SO ORDERED.**

**Dated: December 16, 2002**

**JOHN F. KEENAN**

**United States District Judge**

**PART I**

1990 U.S. Dist. LEXIS 7357

FRANK J. CONDON, III and JEFFREY JOSEPH JONES, Plaintiffs, v. STEPHAN MACHINERY CORP., Defendant

No. 90 Civ. 0283 (PKL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1990 U.S. Dist. LEXIS 7357

June 18, 1990, Decided
June 18, 1990, Filed

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff injured employees filed an action for damages against defendant pressure cooker manufacturer due to alleged injuries sustained when a pressure cooker exploded in their employer's supermarket. They filed a motion to compel the employer to comply with a deposition subpoena duces tecum. The employer refused to comply fully with the subpoena, arguing that it was impermissibly broad under Fed. R. Civ. P. 26(b)(3).

**OVERVIEW:** The employees served the deposition subpoena duces tecum on the employer, commanding the production of their entire employment files, including any and all correspondence, memos, photographs, accident or incident reports, and other documents referable to the accident. The employer objected to the request for discovery and refused to turn over any documents aside from employee health and payroll records. The employer asserted that the remaining documents requested by the employees were prepared in anticipation of litigation and thus fell within the work product doctrine as set out in Fed. R. Civ. P. 26(b)(3). On the date of the accident, the employees' counsel visited the accident site and requested that no evidence be disturbed until an investigation had taken place. The employer argued that certain documents created after that time were prepared in anticipation of future litigation. The court was not in a position to order production of any of the withheld documents, as no suit detailed description of the documents had been provided. However, the court was willing to conduct an in camera inspection of any documents, the discovery of which was disputed.

**OUTCOME:** The court ordered the employer to index and briefly describe all withheld documents and provide the employees' counsel with a summary of the reason or reasons why it believed each document was immunized under a provision of the Federal Rules of Civil Procedure. The court also noted that if there was continued dispute over the discoverability of a document, it was willing to undertake an in camera inspection of the document.

**CORE TERMS:** discovery, work product, immunity, inspection, withheld, in camera, discoverable, anticipation of litigation, deposition, immunized, diversity, undue hardship, production of documents, work product doctrine, subpoena duces tecum, qualified immunity, applicability, photographs, disclosure, privileged, referable, payroll, preparation

**LexisNexis(TM) Headnotes**

*Civil Procedure > Disclosure & Discovery > Work Product*

*Civil Procedure > Disclosure & Discovery > Undue Burden*

[HN1]See Fed. R. Civ. P. 26(b)(3).

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN2]Under Fed. R. Civ. P. 26(b)(3), the basic test to be applied is whether, in light of the nature of the documents and the factual situation in a particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN3]The work product doctrine of Fed. R. Civ. P. 26(b)(3) is commonly recognized as a qualified immunity and not a privilege.

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN4]Materials prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other non-litigation purposes are not under the qualified immunity provided by Fed. R. Civ. P. 26(b)(3). Although a business may regularly maintain accident or incident reports in case litigation ensues, such reports are not generally covered by the Rule 26(b)(3) immunity.

Page 1

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN5]The protection of Fed. R. Civ. P. 26(b)(3) is not limited solely to documents prepared by attorneys.

*Evidence > Relevance > Relevant Evidence*

*Civil Procedure > Disclosure & Discovery > Work Product*

[HN6]Courts have distinguished between documents which have been prepared for litigation and facts which can be elicited from those documents. Although certain materials may be privileged under Fed. R. Civ. P. 26(b)(3), facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or non-existence of documents will not be shielded from discovery. One party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not in itself discoverable.

*Evidence > Privileges*

*Evidence > Procedural Considerations > Burdens of Proof*

[HN7]The burden is on a party claiming the protection of a privilege to establish the facts essential to its applicability.

*Civil Procedure > Disclosure & Discovery > Work Product*

*Evidence > Procedural Considerations > Burdens of Proof*

[HN8]The party seeking immunity under Fed. R. Civ. P. 26(b)(3) bears the burden of enumerating each document it seeks to withhold, asserting the privilege as to each document and establishing the reasons for which the privilege applies. Accordingly, a blanket assertion of work product protection with regard to large numbers of documents is inadequate to prevent discovery.

*Evidence > Writings & Real Evidence > Demonstrative Evidence*

*Civil Procedure > Disclosure & Discovery > Work Product*

*Civil Procedure > Disclosure & Discovery > Undue Burden*

[HN9]If it is determined that certain documents and materials fall within the scope of Fed. R. Civ. P. 26(b)(3), such documents may still be discoverable. The party seeking discovery must demonstrate "substantial need" of the materials to prepare for litigation, and its inability to obtain the "substantial equivalent" of such materials without "undue hardship." Fed. R. Civ. P. 26(b)(3). For instance, courts have generally allowed discovery of photographs and diagrams gathered at the time of an accident due to the inherent inability to reproduce such materials.

**JUDGES:** [*1]

Peter K. Leisure, United States District Judge.

**OPINIONBY:** LEISURE

**OPINION:** MEMORANDUM ORDER

Plaintiffs Frank J. Condon, III and Jeffrey Joseph Jones bring this action for damages due to alleged injuries sustained when a pressure cooker manufactured by defendant Stephan Machinery Corp. exploded in a Grand Union supermarket. See Complaint, paras. 6-17. Plaintiffs have filed a motion to compel non-party Grand Union Corporation ("Grand Union") to comply with a deposition subpoena duces tecum. Grand Union has refused to comply fully with the subpoena, arguing that it is impermissibly broad and calls for the production of documents immunized from discovery under Fed. R. Civ. P. 26(b)(3).

Plaintiffs served a deposition subpoena duces tecum on Grand Union commanding the production of the following documents: "The entire employment files referable to plaintiffs, Frank J. Condon, III and Jeffrey Joseph Jones, including but not limited to all payroll, health and related documents. Any and all correspondence, memos, photographs, accident/incident reports and other documents referable to the accident which occurred on September 11, 1989." Deposition Subpoena dated April 27, 1990, Plaintiffs' Exhibit D. Grand [*2] Union objected to this request for discovery, and refused to turn over any documents aside from employee health and payroll records. Grand Union asserted that the remaining documents requested by plaintiffs were prepared in anticipation of litigation and thus fell within the work product doctrine as set out in Fed. R. Civ. P. 26(b)(3). In response, plaintiffs filed the instant motion seeking an order pursuant to Fed. R. Civ. P. 45(d) directing Grand Union "to produce and permit inspection and copying" of the withheld documents. Fed. R. Civ. P. 45(d).

Rule 26(b)(3) of the Federal Rules of Civil Procedure provides in pertinent part:

[HN1]a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial . . . only upon a showing that the party seeking discovery has

Page 2

substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Although the courts have differed in their interpretations of the phrase " in anticipation of litigation," [HN2]the basic test [*3] "to be applied is whether, in light of the nature of the documents and the factual situation in a particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Wright & Miller, Federal Practice and Procedure, § 2024, at 198; see also Litton Indus. v. Lehman Bros. Kuhn Loeb, 125 F.R.D. 51, 54 (S.D.N.Y. 1989); Grumman Aerospace Corp. v. Titanium Titanium Metals Corp., 91 F.R.D. 84, 88-89 (E.D.N.Y. 1981); cf. Spectrum Systems International Corp. v. Chemical Bank, A.D.2d , N.Y.S.2d , (1st Dept. June 7, 1990), LEXIS 6972. "'[T]he work product immunity requires a more immediate showing than the remote possibility of litigation.'" Grossman v. Schwarz, 125 F.R.D. 376, 389 (S.D.N.Y. 1989) (quoting Garfinkle v. Arcata National Corp., 64 F.R.D. 688, 690 (S.D.N.Y. 1974)). n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Pursuant to Fed. R. Ev. 501, the Court is required to apply state law to question of priviledge in diversity cases. However, Grand Union has asserted only [HN3]the work product doctrine of Rule 26(b)(3), which is commonly recognized as a qualified immunity and not a privilege. Thus federal law will apply in diversity cases. See Railroad Salvage v. Japan Freight Consolidators, 97 F.R.D. 37, 39-40 (E.D.N.Y. 1983) (stating that courts should apply Fed. R. Civ. P. 26(b)(3) to assertions of the work product immunity in diversity cases rather than CPLR § 3101(d)); Merrin Jewelry Co. v. St. Paul Fire and Marine Insurance Co., 49 F.R.D. 54, 56 (S.D.N.Y. 1970) (emphasizing that CPLR § 3101 itself distinguishes between privilege and the work product immunity).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*4]

As a related proposition, [HN4]"[m]aterials prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." Advisory Committee Notes to 1970 Amendment, Rule 26(b)(3) (citations omitted); see also Grossman v. Schwarz, supra, 125 F.R.D. at 388-89; Compagnie Francaise d'Assurance v. Phillips Petroleum Corp., 105 F.R.D. 16, 41 (S.D.N.Y. 1984); Westhemco Ltd. v. New Hampshire Ins. Co., 82 F.R.D. 702, 708 (S.D.N.Y. 1979). Although a business may regularly maintain accident or incident reports in case litigation ensues, such reports are not generally covered by the Rule 26(b)(3) immunity. Otherwise, a business could argue that any documents prepared pursuant to an internal recordkeeping procedure, which had as one of its goals the preparation for potential future litigation, fall within the scope of Rule 26(b)(3).

The policy justifications set forth by the Supreme Court for the protection against discovery of attorney work product in Hickman v. Taylor, 329 U.S. 495 (1947), assist in defining the scope of the work product immunity of Rule [*5] 26(b)(3). n2 In Hickman, the Supreme Court argued convincingly that the required production of documents reflecting the opinions, mental impressions, and personal beliefs of attorneys would undermine the adversary system and, in the long run, the interests of justice. See Hickman, supra, 329 U.S. at 509-12. Although [HN5]the protection of Rule 26(b)(3) is not limited solely to documents prepared by attorneys, the underlying concerns of Hickman v. Taylor are apposite -- to protect against forced disclosure of the creative thinking of parties involved in a litigation, and thereby allow for the free development of litigation strategy.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 Although inconsequential to the motion at bar, there is confusion over whether the scope of the Hickman v. Taylor doctrine is identical to Rule 26(b)(3). In Grossman v. Schwarz, supra, 125 F.R.D. at 388, the Court noted that the "'attorney work product privilege'" (quoting the terminology used by the parties and evidently referring to the Hickman doctrine) is "far broader than the limited protection against disclosure afforded by Rule 26(b)(3)." One commentator has written, however, that Rule 26(b)(3) "will cause no drastic change in practice in the federal courts. It is an accurate codification of the doctrine announced in the Hickman case and developed in later cases in the lower courts." Wright & Miller, supra, § 2023, at 193.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*6]

[HN6]Courts have distinguished between documents which have been prepared for litigation and facts which can be elicited from those documents. Although certain materials may be privileged under Rule 26(b)(3), "facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or non-existence of documents" will not be shielded from discovery. Wright & Miller, supra, § 2023, at 194. "[O]ne party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not in itself discoverable." Advisory Committee Notes to 1970 Amendment, Rule 26(b)(3); see also United States v. International Business Machines Corp., 79 F.R.D. 378, 379-80 (S.D.N.Y. 1978) (distinguishing clearly between fact and work product in withheld documents).

"It is axiomatic that [HN7]the burden is on a party claiming the protection of a privilege to establish the facts essential to its applicability." Grossman v. Schwarz, supra, 125 F.R.D. at 380 (citing von Bulow v. von Bulow, 811 F.2d 136, 14 (2d Cir.), cert. denied, 481 U.S. 1015 (1987)). Thus, [HN8]the party seeking immunity under Rule 26(b)(3) [*7] bears the burden of enumerating each document it seeks to withhold, asserting the privilege as to each document and establishing the reasons for which the privilege applies. Accordingly, "[a] blanket assertion of work product protection with regard to large numbers of documents is inadequate to prevent discovery." 10 Federal Procedure, Discovery and Deposition, § 26:76, at 312-13 (footnotes omitted).

[HN9]If it is determined that certain documents and materials fall within the scope of Rule 26(b)(3), such documents may still be discoverable. The party seeking discovery must demonstrate "substantial need" of the materials to prepare for litigation, and its inability to obtain the "substantial equivalent" of such materials without "undue hardship." Fed. R. Civ. P. 26(b)(3). For instance, courts have generally allowed discovery of photographs and diagrams gathered at the time of an accident due to the inherent inability to reproduce such materials. See Wright & Miller, supra, § 2024, at 208-209, 224.

On the date of the accident which gives rise to this lawsuit, plaintiffs' counsel visited the accident site and requested that no evidence be disturbed until an investigation had [*8] taken place. Grand Union argues that certain documents created after that time were prepared in anticipation of future litigation as evidenced by the visit of plaintiffs' counsel, and therefore are immunized from discovery under Rule 26(b)(3). The Court is currently not in a position to order production of any of the withheld documents, as no suit detailed description of the documents has been provided. Based on the guidance provided in this order, it is hoped that the parties will cooperate together in carrying out the Court's directive, thus avoiding unnecessary Court intervention. However, under the circumstances described below, the Court is willing to conduct an in camera inspection of any documents, the discovery of which is still disputed. See Estate of Lee B. Fisher v. Commissioner of Internal Revenue, Nos. 89-4124, 89-4126, slip op. at 4358-59 (2d Cir. June 6, 1990) (in camera inspection appropriate even of allegedly privileged documents).

CONCLUSION

It is hereby ordered that Grand Union index and briefly describe all withheld documents, and provide plaintiffs' counsel with a summary of the reason or reasons why it believes each document is immunized pursuant [*9] to Rule 26(b)(3). After the process of indexing as described by the Court, plaintiffs' counsel will inform Grand Union as to why any of the withheld documents should be discoverable, either due to the inapplicability of Rule 26(b)(3), or by demonstrating plaintiffs' "substantial need" for the document and their inability "without undue hardship to obtain the substantial equivalent." If there is continued dispute over the discoverability of a document, the Court is willing to undertake an in camera inspection of the document. Any request for an in camera inspection should be accompanied by argument with regard to the applicability of the work product immunity.

*SO ORDERED*